IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MALCOLM S.,[1]

    Plaintiff,

v.                                      1:25-cv-00038-JMR

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand

for a Rehearing with Supporting Memorandum (Doc. 14), which was fully briefed on August 20,

2025.  *See* Docs. 19, 22, 23.  The parties consented to my entering final judgment in this case.

Docs. 4, 8, 9.  Having meticulously reviewed the entire record and being fully advised in the

premises, I find that the ALJ erred by failing to properly assess the opinions of three of

Plaintiff's treating providers:  Bhalachandra Kulkarni, MD, Tyler Owen, PA-C, and Amanda

Renfro, NP.  I therefore GRANT Plaintiff's motion and remand this case to the Commissioner

for further proceedings consistent with this opinion.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only Plaintiff's first name and last initial.  In so doing, the Court balances Plaintiff's privacy interest in his personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P. 5.2(c)(2)(B).

[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

## III.    Background and Procedural History

Plaintiff was born in 1969, completed one year of college, and over the past fifteen years worked as a modular furniture installer and as a "pit master" at a barbecue restaurant.  AR 242,

---

[3] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

284, 294.[4]  Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 25, 2019—alleging disability since June 1, 2015, due to injuries to his back, left shoulder, left knee, left hip, right wrist, and right hand, as well as irritable bowel syndrome.  AR 242–43, 283.  The Social Security Administration ("SSA") denied his DIB claim on November 15, 2019.  AR 124–27.  Plaintiff filed an application for Supplemental Security Income ("SSI") on September 29, 2020.  AR 244–50.[5]  The SSA denied both of his claims on reconsideration on February 19, 2021.  AR 145–48, 158–59.  Plaintiff requested a hearing before an ALJ.  AR 160–68.  On August 17, 2021, ALJ Michael Leppala held a hearing.  AR 50–83.  ALJ Leppala issued his unfavorable decision on September 24, 2021.  AR 21–42.  Plaintiff asked for Appeals Council review.  AR 9–14.  On May 5, 2022, the Appeals Council denied his request for review.  AR 1–6.

On June 14, 2022, Plaintiff filed his first appeal in this court.  AR 1242–44, *Stafford v. Social Security Administration*, No. 22cv448 LF, Doc. 1.  On October 13, 2023, the Honorable Magistrate Judge Laura Fashing found the ALJ erred in his assessment of DNP LaTanyua Blackwell's opinion and remanded the case to the Commissioner for further proceedings.  AR 1273–87.  On remand, the Appeals Council vacated the final decision and remanded the case to an ALJ.  AR 1290–92.

On July 16, 2024, Plaintiff appeared before ALJ Leppala for a second hearing.  AR 1207–33.  ALJ Leppala issued a second unfavorable decision on November 13, 2024.  AR 1165–95.

---

[4] Documents 10-1 through 10-14 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] There does not appear to be an initial denial of Plaintiff's SSI claim in the record.

4

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2022.  AR 1172.  The ALJ found that Plaintiff's part-time work at a barbecue restaurant between 2018 through 2020 was not substantial gainful activity ("SGA"). *Id.*  However, the ALJ concluded that Plaintiff's work as a mail runner at a law firm that started on April 27, 2023, and continued through the date of the ALJ hearing did constitute SGA.  *Id.* The ALJ then used the sequential evaluation process to evaluate whether Plaintiff was disabled during any twelve-month period in which he was not engaged in SGA after June 1, 2015, his alleged onset date.  AR 1170, 1174.

At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, post-laminectomy syndrome of the lumbar region, spondylolisthesis and intervertebral disc degeneration of the lumbosacral region, spondylosis of the lumbosacral region without radiculopathy, rheumatoid arthritis, and obesity.  AR 1174.  The ALJ found that Plaintiff's gastroesophageal reflux disease, gout, anxiety, and depression were nonsevere impairments.  AR 1174–78.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 1178–79.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  AR 1180–93.  The ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and or carrying ten pounds; standing and/or walking for about six hours in an eight hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks; he is further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, occasionally balancing, stooping, kneeling, crouching, crawling, and reaching overhead with their dominant left upper extremity; the Claimant is limited to frequent exposure to extreme cold and unprotected heights[,] dangerous machinery, and moving machinery.

AR 1180.

At step four, the ALJ found that Plaintiff did not have any past relevant work.  AR 1193.
The ALJ found Plaintiff not disabled at step five because there were jobs that exist in significant
numbers in the national economy that he could perform—such as cashier, storage rental clerk,
and mail clerk.  AR 1194–95.  Because this Court previously remanded Plaintiff's case, Plaintiff
was not required to seek Appeals Council review again, and the ALJ's decision stands as the
final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.984(a), 416.1484.  Plaintiff timely
filed his second appeal to this Court on January 13, 2025.[6]  Doc. 1.

## IV.    Plaintiff's Claims

Plaintiff raises two arguments for reversing and remanding this case: (1). The ALJ erred
in concluding that his work at the law firm could not be considered a trial work period; and (2)
the ALJ failed to properly assess the opinions of treating providers Bhalachandra Kulkarni, MD,
Tyler Owen, PA-C, and Amanda Renfro, NP.  *See* Doc. 14 at 5–27.  The Court remands based
upon the ALJ's failure to properly assess the opinions of Plaintiff's treating providers.  The
Court does not address the other argument, as it "may be affected by the ALJ's treatment of this
case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.    The ALJ failed to properly assess the opinions of three treating providers

Plaintiff argues that the ALJ failed to properly assess the opinions of treating providers
Bhalachandra Kulkarni, MD; Tyler Owen, PA-C; and Amanda Renfro, NP.  Doc. 14 at 5–27.  He
argues that the ALJ's articulation of how persuasive he found the provider's opinions is legally
insufficient and unsupported by substantial evidence.  *Id*.  Finally, he argues that the ALJ failed

---

[6] If the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of
the case, the ALJ's decision becomes final 61 days after it is issued.  20 C.F.R. §§ 404.984 (b)–
(d), 416.1484 (b)–(d).  The claimant then has 60 days to file an appeal to this Court.  20 C.F.R.
§§ 404.981, 416.1481.

to incorporate certain limitations contained in the provider's opinions without any explanation. *Id*. at 23–24.  In response, the Commissioner argues that the ALJ's RFC assessment is free from legal error and supported by substantial evidence.  Doc. 19 at 11–22.  For the reasons explained below, the Court agrees with the Plaintiff.

### A.  Applicable Law

Social Security regulations define five categories of evidence:  (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a), 416.913(a). The SSA evaluates evidence it receives "according to the rules pertaining to the relevant category of evidence."  *Id*.  The rules pertaining to medical opinions require the SSA to evaluate and articulate the persuasiveness of the medical opinions.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

In evaluating the persuasiveness of medical opinions, the SSA considers five factors:  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a medical opinion or finding.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  An ALJ is always required to explain how he or she considered the first two factors:  "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions are equally well-supported and consistent with the record.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). As the Tenth Circuit has explained,

> "[s]upportability" examines how closely connected a medical opinion is to the
> evidence and the medical source's explanations:  "The more relevant the objective

> medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be." [20 C.F.R.] § 404.1520c(c)(1); *id.* § 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 404.1520c(c)(2); *id.* § 416.920c(c)(2).

*Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. Jul. 6, 2021) (brackets and ellipses omitted).

While the regulations allow the ALJ some discretion in *how* he articulates his findings on the persuasive value of medical opinion evidence, it provides no leeway as to *whether* he articulates such findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (providing that the ALJ "will articulate" how persuasive he . . . finds "all of the medical opinions" in the case record). In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). An ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Judges in this district have found bare conclusions regarding the persuasiveness of a medical opinion insufficient.

> [A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c. An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical source's opinions. *See id.* § 404.1520c. Although the regulation does not prescribe the depth with which an ALJ must discuss the factors of

supportability and consistency, the explanation must at least eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence . . . ."

*Zambrano v. Kijakazi*, No. 20cv1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (quotation, alterations, and citation omitted); *see also Frazer v. Kijakazi*, No. 20cv1147 GBW, 2022 WL 682661, at *6 (D.N.M. Mar. 8, 2022) ("An ALJ's failure to provide any reasons for rejecting a medical source opinion beyond stating that it is inconsistent with the record is grounds for remand."); and *Klein v. Kijakazi*, No. 20cv1199 LF, 2022 WL 2827582, at *7 (D.N.M. Jul. 20, 2022) (ALJ finding an opinion "somewhat persuasive" without any explanation is not legally sufficient).

## B. Factual Background

### a. Bhalachandra Kulkarni, MD

On November 25, 2021, Dr. Kulkarni completed a physical medical source statement ("MSS"), which asked him to consider Plaintiff's "medical history and the chronicity of findings as **from one year prior to initial visit to current examination**." AR 1991 (emphasis in original). Dr. Kulkarni found Plaintiff had the following physical limitations:

- Occasionally lift and/or carry twenty pounds;
- Stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday;
- Sit (with normal breaks) for a total of less than two hours in an eight-hour workday; and
- Less than occasionally kneel, stoop, crouch, and crawl.

*Id*.

On November 29, 2021, Dr. Kulkarni also completed a non-physical MSS and found Plaintiff's pain was severe, and caused sleep disturbances and fatigue, resulting in resting or laying down more than allotted break periods. AR 1992. Dr. Kulkarni opined that Plaintiff had the following non-physical work-related limitations:

- Extreme limitation in the ability to maintain regular attendance and be punctual within customary tolerance because of pain or fatigue;
- Marked limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments) without distraction from pain or fatigue; and
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

*Id.*  Dr. Kulkarni stated that these limitations were supported by observations, records, and objective testing, additionally noting Plaintiff had chronic back pain which he had attempted to treat with surgeries, a pain specialist, and oxycodone, all with little or no relief.  *Id.*

The ALJ found Dr. Kulkarni's opinion "largely persuasive."  AR 1192.  The only explanation the ALJ provided for coming to this conclusion is as follows:

> The limitations with lifting and carrying were supported by his history of surgeries. However, the exertional limitations with standing, walking, and sitting were not consistent with treatment records, which showed he was responding well to pain management treatment nor his current ongoing full-time work activity. Additionally, the psychological limitations given are completely unsupported by his mental status examinations and were contrary to his work activity.

AR 1191–92.

### b.  Tyler Owens, PA-C

On June 14, 2024, PA-C Owens completed a physical MSS, which asked him to consider Plaintiff's "medical history and the chronicity of findings as **<u>from one year prior to initial visit to current examination</u>**."  AR 1980 (emphasis in original).  PA-C Owens found Plaintiff had the following physical limitations:

- Occasionally and frequently lift and/or carry less than five pounds;
- Stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday;
- Sit (with normal breaks) for a total of two hours in an eight-hour workday;
- Must alternate sitting and standing to relieve pain or discomfort more than that provided by normally scheduled breaks; and
- Less than occasionally kneel, stoop, crouch, and crawl.

10

*Id.*

On June 14, 2024, PA-C Owens also completed a non-physical MSS and found Plaintiff's pain was severe, and caused sleep disturbances and fatigue, resulting in resting or laying down more than allotted break periods.  AR 1979.  PA-C Owens opined that Plaintiff had the following non-physical work-related limitations:

- Marked limitation in the ability to maintain regular attendance and be punctual within customary tolerance because of pain or fatigue;
- Moderate limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments) without distraction from pain or fatigue; and
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods;
- Moderate limitation with interacting with others in the workplace without distracting them by exhibiting behaviors caused by pain or fatigue.

*Id.*  PA-C Owens opined that Plaintiff would be absent about two days per month, and would be off-task twenty-five percent or more of the day.  *Id.*  PA-C Owens explained that these limitations were based on Plaintiff's lumbar spondylosis, lumbar spinal stenosis, polyneuropathies, and history of left shoulder subluxation and shoulder pain.  *Id.*

The ALJ found PA-C Owen's opinion "somewhat persuasive."  AR 1192.  The only explanation the ALJ provided for coming to this conclusion is as follows:

> The exertional limitations with standing, walking, and sitting and extreme limitations lifting and carrying were not consistent with treatment records, which showed he was responding well to pain management treatment nor his current ongoing full-time work activity.  In particular[ ], the extent of these limitations w[as] completely contradictory to the fact that the Claimant was actively working forty-hours a week at the time Mr. Owens completed this form.  Additionally, the psychological limitations given are completely unsupported by his mental status examinations and were contrary to his work activity.

AR 1192.

11

**c. Amanda Renfro, NP**

On August 13, 2024, NP Renfro completed a physical MSS, which asked her to consider Plaintiff's "medical history and the chronicity of findings as **from one year prior to initial visit to current examination**." AR 1994 (emphasis in original). NP Renfro found Plaintiff had the following physical limitations:

- Occasionally and frequently lift and/or carry less than twenty pounds;
- Stand and/or walk (with normal breaks) for a total of four hours in an eight-hour workday;
- Sit (with normal breaks) for a total of four hours in an eight-hour workday; and
- Less than occasionally kneel, stoop, crouch, and crawl.

*Id*.

On August 13, 2024, NP Renfro also completed a non-physical MSS and found Plaintiff's pain was severe, and caused sleep disturbances and fatigue, resulting in resting or laying down more than allotted break periods. AR 1995. NP Renfro opined that Plaintiff had the following non-physical work-related limitations:

- Marked limitation in the ability to maintain regular attendance and be punctual within customary tolerance because of pain or fatigue;
- Marked limitation in the ability to maintain attention and concentration for extended periods (i.e. 2-hour segments) without distraction from pain or fatigue; and
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.
- Marked limitation with interacting with others in the workplace without distracting them by exhibiting behaviors caused by pain or fatigue.

*Id.* NP Renfro further opined that Plaintiff would be absent from work three or more days per month, and would be off task twenty-five percent or more of each day. *Id*.

The ALJ found NP Renfro's opinions "relatively persuasive." AR 1193. The only explanation the ALJ provided for coming to this conclusion is as follows:

The limitations with lifting and carrying were supported by his history of surgeries. However, the exertional limitations with standing, walking, and sitting were not consistent with treatment records, which showed he was responding well to pain management treatment nor his current ongoing full-time work activity. Additionally, the psychological limitations given are completely unsupported by his mental status examinations and were contrary to his work activity.

*Id.*

## C. Analysis

### a. The ALJ did not adequately explain why he rejected the treating provider's limitations in Plaintiff's abilities to stand, walk, and sit.

The ALJ's reasons for rejecting Dr. Kulkarni's, PA-C Owen's, and NP Renfro's limitations in Plaintiff's abilities to stand, walk, and sit are legally insufficient and unsupported by substantial evidence. The ALJ cites no record evidence for his assertion that these limitations are "not consistent with treatment records which showed he was responding well to pain management treatment nor his current ongoing full-time work activity." As such, the ALJ's reasons for finding these limitations inconsistent "constitutes mere conclusion." *Musgrave*, 966 F.2d at 1374; *see also Zambrano*, 2022 WL 1746765, at *5 ("[A] bare conclusion regarding the persuasiveness of a medical opinion does not suffice under 20 C.F.R. § 404.1520c.").

The Court is not persuaded by the Commissioner's argument that the "ALJ permissibly supported this conclusion with his discussion earlier in the decision." Doc. 19 at 16. The Commissioner points to no analysis or discussion from earlier parts of the ALJ's decision that "show" Plaintiff was "responding well to pain management treatment" such that he would not be as limited in his abilities to stand, walk, and sit as Dr. Kulkarni, PA-C Owen, and NP Renfro opined. Instead, the Commissioner cherry picks select bits of information from the ALJ's summary of the medical evidence and lists them in a way that appears to support the ALJ's bare

13

conclusion. *See* Doc. 19 at 16–17. The Commissioner claims that the ALJ "discussed Plaintiff's

pain management extensively," including that he reported the following:

- following the December 2016 lumbar fusion, "overall doing well" in March 2017 and could walk around Home Depot for an hour and then go grocery shopping (AR 533, 538, 1184);
- "definitely getting stronger" the next month (AR 527, 1184);
- in July 2018, low back facet injections improved functionality (AR 689, 730, 1184);
- in February 2019, a medi[]al branch block injection improved his pain 70% (AR 810-11, 815, 1185);
- increased left shoulder pain in December 2019 (842, 1185);
- In March 2021, he only took oxycodone when needed (AR 1104, 1185);
- two months later, tizanidine helped his muscle spasms (AR 1127, 1185);
- beginning to work full time in April 2023 but there was no indication his medical conditions improved so that he could return to work (AR 1186 see e.g., AR 1172, 1553, 1703, 1712, 1715);
- In September 2023, he reported his pain was "next to nothing" when he took medication (AR 1183-86, 1778).
- the following month, his pain "had actually been good" for the last month, and he was a "totally different person" after moving and taking his medications (AR 1186, 1768).

*Id.* Read in a vacuum, this information does appear to "show" Plaintiff was "responding well to

pain management treatment." Read in context of the ALJ's decision, however, it shows no such

thing. The Commissioner picked only select bits of information from the ALJ's chronological

summary of Plaintiff's medical records from 2015 through 2024. *See* AR 1183–86. But the

Commissioner does not paint an accurate picture of the ALJ's decision. The ALJ's summary of

the medical records contains repeated references to both new and recurrent pain, interspersed

with some references to periods of improved pain. *Id.* Plaintiff could just as easily cherry pick

facts from the ALJ's summary of the medical records to "show" Plaintiff was **not** "responding

well to pain management treatment:"

14

- Following the December 2016 lumbar fusion, he had difficulties driving from Nebraska to Albuquerque—this "beat his back up" and he had to have help driving and had to take breaks (AR 540 (Exh. 4F at 18));
- Reported significant pain from lying on his stomach or standing or walking too long the next month (AR 527 (Exh. 4F at 5));
- In October 2018, he received a sacroiliac joint injection, which he later reported only improved his pain for one day, and in January 2019 he reported worsening pain after an injection (AR 744, 748 (Exh. 12F at 19, 23, 28));
- In April 2019 he was noticing more pain in his sacroiliac region and went to the hospital to try injections there before getting further medial branch injections (AR 821 (Exh. 16F at 16));
- In January 2021, he reported that his pain medication was providing little help for his pain (AR 1070 (Exh. 23F at 28));
- In October 2021, he reported back pain, and, while his pain medications reduced his pain, he was never able to do chores, si[t], or stand without pain; he reported that it was hard to walk and hard to sit for long periods (AR 1970 (Exh. 32F at 6));
- In 2023, he had ongoing low back pain that was worse in the morning and in December 2023 he asked his provider to increase his pain medication (AR 1760, 1764 (Exh. 30F at 23, 27)).

*See* AR 1183–86.

The Court includes this set of select alternate facts from the ALJ's summary of the medical records to demonstrate that the ALJ's summary of the medical records—when read as a whole—does not "show" that Plaintiff was "responding well to pain management treatment." The ALJ's summary of the medical records is just that—a summary. It is not the missing analysis the Commissioner paints it as. Instead, the ALJ's decision contains mixed findings over a long period of time, but draws no conclusions and contains no analysis of how these mixed findings impact Plaintiff's RFC. The ALJ never explained how the treatment records showed that Plaintiff was responding well to pain management treatment. The ALJ did not discuss this when discussing the persuasiveness of Dr. Kulkarni's, PA-C Owen's, or NP Renfro's opinions. And the Commissioner's argument that this analysis is found in an earlier part of the ALJ's

decision is unavailing.  There is no analysis in the earlier part of the decision.  It is axiomatic that the Commissioner may not provide reasoning the ALJ did not provide.  This would constitute an impermissible post-hoc rationalization.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (Reviewing court may evaluate an ALJ's decision "based solely on the reasons stated in the decision" and may not "supply[ ] possible reasons" for an ALJ's decision after the fact.); *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."

The second cursory reason the ALJ gave for rejecting Dr. Kulkarni's, PA-C Owen's, and NP Renfro's opined limitations in Plaintiff's ability to stand, walk, and sit—that he was currenting working full time—is unsupported by evidence.  The ALJ does not explain how Plaintiff's full-time work as a mail runner at a law office justifies rejecting these limitations.  And, having reviewed the evidence, the Court does not see any obvious connection.  Both Plaintiff and Plaintiff's employer testified that Plaintiff was able to do his job as a mail runner only because Plaintiff was allowed to change positions at will and take frequent additional breaks.  Plaintiff testified that he was able to do his job as a law firm mail runner because he is able to take a lot of breaks.  AR 1214.  Plaintiff's employer filed an affidavit indicating that Plaintiff performs light duty work, but "is not required to do anything physically demanding such as lifting" and "spends most of his day outside of the office in the company truck, so he is able to sit and move as he needs to while making deliveries."  AR 1703.  Plaintiff's employer further stated that Plaintiff "cannot be on his feet too long" because this affects his back and that Plaintiff had to take more breaks/rest periods than other employees, had fewer and easier duties, and required extra help to complete his job.  AR 1709–10.  Plaintiff's employer also stated that

Plaintiff was only about 80% as productive as other employees.  AR 1709.  The vocational

expert ("VE") testified that the need to alternate sit/stand every fifteen minutes would preclude

light work.  AR 1231.  The VE further testified that the need to take more than the typically-

allowed two scheduled breaks in an eight-hour day would completely preclude competitive

employment.  AR 1231–32.[7]  Given Plaintiff's testimony and the affidavit from Plaintiff's

employer, it is unclear to the Court how Plaintiff's work as a mail runner shows that he is less

limited in his abilities to stand, walk, and sit than Dr. Kulkarni, PA-C Owen, or NP Renfro

opined.  The ALJ offers no explanation, and thus this reason is legally insufficient and

unsupported by any substantial evidence.

In conclusion, the ALJ's reasons for rejecting Dr. Kulkarni's, PA-C Owen's, and NP

Renfro's limitations in Plaintiff's abilities to stand, walk, and sit are legally insufficient and

unsupported by substantial evidence.

### b. The ALJ did not adequately explain why he rejected the treating provider's limitations related to Plaintiff's pain and fatigue.

The ALJ's reasons for rejecting the limitations in Dr. Kulkarni's, PA-C Owen's, and NP

Renfro's Medical Assessments of Ability to Do Work-Related Activities (Non-Physical) are

legally insufficient and unsupported by substantial evidence.  On the first section of these forms,

all three providers opined that Plaintiff suffers from a pain-producing impairment that causes

severe pain, sleep disturbances, and fatigue.  AR 1979, 1992, 1995.  The second section of the

form asked each provider to opine about how Plaintiff's physical limitations affected his non-

---

[7] At step one, the ALJ did find that Plaintiff's work as a mail runner was "not under special conditions or subsided."  AR 1173.  This discussion at step one, however, is not a substitution for a proper RFC analysis.  It is unclear how Plaintiff's performance of his job as a mail runner, particularly as performed, shows that Plaintiff is not as limited in his abilities to stand, sit, and walk as the providers opined.  The Court is unable to follow the ALJ's reasoning for using this job to reject these RFC limitations.

physical work activities.  *Id.*  In this second section, all three providers opined that Plaintiff had the moderate, marked, or extreme limitations in his abilities to do the following:  (1) maintain regular attendance and be punctual within customary tolerance because of pain or fatigue; (2) maintain attention and concentration for extended periods (i.e. 2-hour segments) without distraction from pain or fatigue; and (3) complete a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.  *Id.*  PA-C Owen and NP Renfro also found Plaintiff moderately to markedly limited in his abilities to interact with others in the workplace without distracting them by exhibiting behaviors caused by pain and fatigue.  AR 1979, 1995.  The ALJ rejected these limitations on the basis that "the psychological limitations given are completely unsupported by his mental status examinations and were contrary to his work activity."  AR 1191–93.

The Court agrees with Plaintiff that the ALJ erred by characterizing these limitations as "psychological limitations."  Doc. 14 at 12.  Mental limitations and limitations in non-physical work activities impacted by pain and/or fatigue are not the same.  *See Benson v. Saul,* No. 19-CV-0457 SMV, 2020 WL 3448046, at *5 (D.N.M. June 24, 2020) (ALJ erred by rejecting limitations in the abilities to maintain regular attendance, maintain attention and concentration, and complete a normal workday and workweek that were based on claimant's pain and fatigue on the basis of mental health treatment and limitations); *Salazar v. Kijakazi,* No. CV 21-0256 KK, 2022 WL 17266612, at *8 (D.N.M. Nov. 29, 2022) (ALJ erred by rejecting limitations based on pain and fatigue solely on the basis that the limitations were inconsistent with mental status exam findings). Even were the Court to find mental status exams a valid basis for discounting the limitations based on pain and fatigue—which it does not—the ALJ cites to no

18

mental status examinations and offers no explanation as to how the mental status exams rendered the limitations "completely unsupported."

Finally, the ALJ offers no explanation as to how Plaintiff's "work activity" renders "unsupported" the limitations all three providers found in Plaintiff's abilities to maintain regular attendance, maintain attention and concentration, and complete a normal workday or workweek. *See* AR 1979, 1992, 1995.  As discussed above, both Plaintiff and Plaintiff's employer testified that Plaintiff was able to do his job only because Plaintiff was allowed to take frequent additional breaks.  In addition, Plaintiff's employer stated that Plaintiff missed between one to three days of work a month and was only 80% as productive as other employees.  AR 1703.  The VE testified that being off task ten percent of the time or more would be work preclusive, and that more than one absence per month or a total of ten absences in a year would also be work preclusive.  AR 1230.  Because there is testimony that Plaintiff's work activity at the law firm is consistent with Dr. Kulkarni's, PA-C Owen's, and NP Renfro's limitations, and because the ALJ offers no explanation as to how his work activity renders the provider's limitations "completely unsupported," this reason for discounting these limitations is legally insufficient and unsupported by substantial evidence.

c. **The ALJ did not adequately explain why he rejected the treating provider's limitations in Plaintiff's abilities to kneel stoop, crouch, and crawl.**

The ALJ failed to either incorporate into Plaintiff's RFC or explain why he rejected Dr. Kulkarni's, PA-C Owen's, or NP Renfro's opined limitations in Plaintiff's abilities to kneel, stoop, crouch, and crawl—which all three providers found Plaintiff could do "**less than** occasionally."  AR 1980, 1991, 1994 (emphasis added).  Despite finding Dr. Kulkarni's, PA-C Owen's and NP Renfro's opinions persuasive, the ALJ did not incorporate this level of limitation into Plaintiff's RFC.  Instead, without any explanation, the ALJ found that Plaintiff had the RFC

19

to occasionally kneel, stoop, crouch, and crawl.  AR 1180.  The ALJ offered no explanation for rejecting the providers' opined levels of limitation, despite the requirement that he do so.  *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Further, at least one of the jobs the ALJ found Plaintiff could perform at step five, *see* AR 1194, requires occasional stooping and kneeling.  The job of storage rental clerk (DOT 295.367-026) requires occasional stooping and kneeling.  SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES ("SCO"), 1993, p. 365.  The other two jobs the ALJ found Plaintiff capable of performing—cashier (DOT 211.462-010) and mail clerk (DOT 209.687-026)—do not require kneeling, stooping, crouching, or crawling.  *Id*. at pp. 333, 343.  The Commissioner might have argued this error is harmless because it only eliminates one of the jobs at step five.  *See Evans v. Colvin*, 630 F. App'x. 731, 735–36 (10th Cir. 2016) (unpublished) (Court may find harmless error if the ALJ improperly identifies a job at step five but the remaining jobs exist in numbers that satisfy the "significant number of jobs" requirement).  However, the Commissioner did not argue harmless error—instead asserting that the ALJ did not need to explain why he rejected these limitations because the ALJ "largely tracked" another opinion that he found persuasive.  Doc. 19 at 21.  The Court does not find the Commissioner's arguments persuasive.  *See* SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  On remand, the Commissioner must adequately explain how he assesses the opined limitations in Plaintiff's abilities to kneel, stoop, crouch, and crawl.

## VI.     Conclusion

The ALJ erred by failing to properly assess the opinions of Dr. Kulkarni, PA-C Owens, and NP Renfro.  The Court remands so that the ALJ can remedy these errors.  The Court does not address Plaintiff's other claim of error it "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 14), is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

Jennifer M. Rozzoni
United States Magistrate Judge
Presiding by Consent